IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| **LINDA ALLARD,** on behalf of herself and all others similarly situated, ) ) ) **Plaintiff,** ) ) v. ) ) **SCI DIRECT, INC. d/b/a NEPTUNE SOCIETY,** ) ) ) **Defendant.** ) | No. 3:16-cv-01033 JUDGE SHARP MAGISTRATE HOLMES |

### DEFENDANT'S REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

It is undisputed that Defendant SCI Direct, Inc. d/b/a Neptune Society ("Defendant" or "SCI") only came into contact with Plaintiff Linda Allard ("Plaintiff" or "Ms. Allard") because she first provided her contact information directly to SCI. (Plaintiff's Response to Defendant's Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment ("Pl.'s SUMF Resp.") ¶¶ 1-2). It is undisputed that the only number Plaintiff provided to SCI was her cellular telephone number. (Pl.'s SUMF Resp. ¶ 4). It is also undisputed that Plaintiff initiated this process for the very purpose of gathering information about SCI's services because "at the time she was trying to make a decision on how to handle her final arrangements." (Pl.'s SUMF Resp. ¶ 2). Now, Plaintiff seeks to sustain causes of action against SCI for following-up with Plaintiff and providing Plaintiff with the precise information she wished to receive. Because Plaintiff initiated contact with SCI, and because SCI followed-up in an attempt to complete the very process that Plaintiff initiated, SCI did not participate in "telemarketing" calls as defined by the TCPA. SCI is therefore entitled to summary judgment in its favor on all of Plaintiff's claims under the TCPA.

**A. Plaintiff's Blending of "Telemarketing" and "Advertising" is Deceptive. Only "Telemarketing" Calls are Subject to the Requirements of 47 C.F.R. § 64.1200(d).**

Plaintiff goes to great lengths in her Opposition Brief to speak of "telemarketing" and "advertising" as if they are one in the same. But the TCPA defines these terms differently, and only certain calls are recoverable under Section 47 C.F.R. § 64.1200(d).

Section 227(c) tasks the Federal Communications Commission ("FCC") to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights," by "develop[ing] proposed regulation to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish the purpose of this section." 47 U.S.C. § 227(c)(1). In response, the FCC implemented, *inter alia*, 47 CFR § 64.1200(d), which provides certain minimum standards for persons or entities initiating calls "<u>for telemarketing purposes</u>." Indeed, 47 C.F.R. § 64.1200(d) is the entire basis of Plaintiff's Section 227(c) claim, (*see* Pl.'s Am. Compl. ¶¶ 40-43, 78-84) and nowhere does 47 C.F.R. § 64.1200(d) even mention the term "advertising." Telemarketing is explicitly defined as "the initiation of a telephone call or messages for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12). Therefore, Plaintiff can only succeed on her Section 227(c) claims if she can first prove that SCI's non-CallFire calls were "telemarketing calls." The undisputed material facts, as well as recent case law, only show that SCI's calls were not "telemarketing calls" because they did not "encourage the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).

4823-2147-7952 v3
2781581-000124 01/31/2017

B.  **Recent Case Law Only Further Demonstrates that Defendant's Non-CallFire Calls Are Not "Telemarketing" Calls.**

Just five months ago, the U.S. District Court for the District of Washington decided a nearly-identical case regarding "telemarketing" that is directly on point. *See Wick v. Twilio*, No. C16-00914RSL, 2016 WL 6460316 (W.D. Wash. Nov. 1, 2016). In *Wick*, the plaintiff accessed a website offering free samples of a pre-workout supplement. *Id.* at *1. In order to receive the supplement, the plaintiff, just as Ms. Allard did here, submitted his name, address, and cell phone number into a form on the website. *Id.* The plaintiff was then directed to a webpage with pricing information, where the plaintiff ultimately decided not to continue his order and closed the webpage. *Id.* Shortly thereafter, the plaintiff received a text message that read, "Noah, Your order at Crevalor is incomplete and about to expire. Complete your order by visiting http//hlth.co/xDoXEZ." *Id.* The plaintiff subsequently filed a claim against the initiator of the text message for violation of the TCPA. *Id.* The defendant moved to dismiss plaintiff's TCPA claims alleging that the text messages did not constitute telemarketing. *Id.* at *2.

Relying on *Daniel v. Five Stars Loyalty*, No. 15-cv-03456-WHO, 2015 WL 74554260, at *1 (N.D. Cal. Nov. 24, 2015) (explained in full in Defendant's Memorandum in Support of its Motion for Summary Judgment), and *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012) (cited in Plaintiff's Opposition Brief), the District Court dismissed the plaintiff's amended complaint, finding that the text messages were not telemarketing messages because the purpose of them was to "remind[] him how to complete the order process that he initiated." *Wick*, 2016 WL 6460316 at *2 (emphasis added); *see also id.* at *3 ("It is not telemarketing for the service or product provider to inform plaintiff how to complete that process, just as it was not telemarketing for Five Stars to inform Daniel how to finish registering.") In the District Court's own words, "Because plaintiff consented to the communications at issue when he submitted his

3

telephone number during the Crevalor order process, plaintiff fails to plead a TCPA violation." *Id.* at *3; *see also Aderhold v. car2go N.A. LLC*, No. 14-35208, 2016 WL 4709873, at *1 (9th Cir. Sept. 9, 2016) (text message to complete registration process initiated by purchaser was not telemarketing message); *Daniel*, 2015 WL 7454260 at *5 (holding same).

Here, just like *Wick*, *Daniel*, and *Aderhold*, SCI's training materials and call scripts clearly show that SCI's calls did not "encourag[e] the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). It is undisputed that Plaintiff provided her cellular telephone number, and only her cellular telephone number, to SCI for the express purpose of gathering information about SCI's pre-need cremation services. (Pl.'s SUMF Resp ¶¶ 1-4). SCI's call script documents demonstrate that the purpose of SCI's follow-up calls, like the calls made to Plaintiff, are to encourage a follow-up appointment with the customer, not a direct telephone sale. (Ramos Decl. at ¶ 10, Ex. 1). The flow chart call script shows that SCI's sales representatives are seeking to set up a 15-20 minute appointment "to explain our services that are available to you," "answer any questions you have and then … leave you with a price." (Ramos Decl. at ¶ 11, Ex. 1). Furthermore, the "Challenge System" training materials indicate that the end purpose of the call is to set up an appointment with the potential customer. (Ramos Decl. at ¶ 12, Ex. 2). Thus, like *Wick*, SCI's calls to Plaintiff were to complete the sales "process that [s]he initiated." *Wick*, 2016 WL 6460316 at *2. Again, by law, even if it wanted to, SCI cannot make sales of their products over the phone because the Federal Trade Commission requires SCI, and all other funeral and cremation providers, to make a number of <u>written disclosures</u> to potential customers in connection with the purchase of pre-need cremation services. *See* 16 C.F.R. § 453 *et seq.*; (Ramos Decl. at ¶ 13). SCI's calls to Plaintiff were only for the purpose of following-up with the very information she first requested herself. As such,

4823-2147-7952 v3
2781581-000124 01/31/2017

Plaintiff cannot sustain a cause of action under Section 227(c) because SCI's calls to her were not telemarketing calls.

## CONCLUSION

The fact remains that Plaintiff initiated the relationship between her and SCI by providing her cellular telephone number to SCI. At Plaintiff's own request, SCI followed-up on this request and called Plaintiff to attempt to set-up a meeting to discuss the very thing for which she wanted more information. These calls were not "telemarketing" calls as expressly defined by the provisions of the TCPA, as well as multiple federal courts considering these exact issues. Because the undisputed material facts demonstrate that Plaintiff cannot sustain her causes of action under the TCPA, SCI is entitled to summary judgment on all of Plaintiff's claims against it.

Respectfully submitted,

*s/ Austin K. Purvis*
Scott Carey (BPR No. 15406)
Austin K. Purvis (BPR No. 32329)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
211 Commerce Street, Suite 800
Nashville, Tennessee 37201
(615) 726-5600
scarey@bakerdonelson.com
apurvis@bakerdonelson.com

*Attorneys for Defendant*

# CERTIFICATE OF SERVICE

I hereby certify that, on March 14, 2017, I caused a copy of the foregoing *Reply to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment* to be filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, including:

| | |
|---|---|
| T. Blaine Dixon | Jeremy M. Glapion |
| KENNEDY LAW FIRM, PLLC | THE GLAPION LAW FIRM, LLC |
| 127 South Third Street | 1704 Maxwell Drive |
| Clarksville, Tennessee 37040 | Wall, New Jersey 07719 |
| (931) 645-9900 | (732) 455-9737 |
| bdixon@klflaw.net | jmg@glapionlaw.com |

*s/ Austin K. Purvis*
Austin K. Purvis

4823-2147-7952 v3
2781581-000124 01/31/2017