# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| **LINDA ALLARD**, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**SCI DIRECT, INC. d/b/a NEPTUNE SOCIETY,**<br><br>Defendant. | CIVIL CASE NO: 16-1033<br>JUDGE DRAIN<br>MAGISTRATE JUDGE HOLMES |

# PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION

**Table of Contents**

I.      INTRODUCTION. ..................................................................................................... 1

II.     FACTUAL BACKGROUND. ..................................................................................... 2

   A.   Relevant Provisions of Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ....... 2

   B.   Facts Applicable to All Members of the Putative Class. .................................... 4

   C.   Facts Applicable to Plaintiff Allard. ...................................................................... 5

III.    THE PROPOSED CLASSES SATISFY EACH OF THE PREREQUISITES FOR
        CERTIFICATION. ...................................................................................................... 6

   A.   The Numerosity Prerequisite is Satisfied. ............................................................ 7

      i.    Prerecord Class ................................................................................................. 8

      ii.   DNC Class ......................................................................................................... 9

   B.   The Commonality Prerequisite is Satisfied .......................................................... 13

      i.    Prerecord Class ................................................................................................. 14

      ii.   DNC Class ......................................................................................................... 15

   C.   Plaintiff's Claims are Typical of the Class's Claims. ........................................... 16

      i.    Prerecord Class ................................................................................................. 16

      ii.   DNC Class ......................................................................................................... 17

   D.   The Adequacy of Representation Prerequisite is Satisfied. ................................. 18

   E.   The Classes are Ascertainable. ............................................................................. 20

      i.    Prerecord Class ................................................................................................. 20

      ii.   DNC Class ......................................................................................................... 21

   F.   The Proposed Classes Also Satisfy Rule 23(b)(3). ............................................. 21

      i.    Prerecord Class ................................................................................................. 22

      ii.   DNC Class ......................................................................................................... 24

IV.     CONCLUSION. ........................................................................................................ 25

## Cases

*Beattie v. CenturyTel, Inc.*
   511 F.3d 554 (6th Cir. 2007) ........................................................................ 18, 22

*Bittinger v. Tecumseh Prods. Co.*
   123 F.3d 877 (6th Cir. 1997) ................................................................................... 23

*Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*
   --- F.3d ---, 2016 U.S. App. LEXIS 22297 (6th Cir. Dec. 15, 2016) ........................... 6

*Chapman v. Wagener Equities, Inc.,*
   2014 U.S. Dist. LEXIS 16866 (N.D. Ill. Feb. 11, 2014) ............................................ 1

*Charvat v. NMP, LLC*
   656 F.3d 440 (6th Cir. 2011) .................................................................................... 4

*Christy v. Heritage Bank*
   2013 U.S. Dist. LEXIS 182288 (M.D. Tenn. Nov. 8, 2013) ..................... 8, 9, 18, 22

*Coleman v. GM Acceptance Corp.*
   220 F.R.D. 64(M.D. Tenn. 2004) .............................................................................. 23

*Eisen v. Carlisle & Jacquelin*
   417 U.S. 156 (1974) .................................................................................................. 7

*Engel v. Scully & Scully, Inc.*
   279 F.R.D. 117 (S.D.N.Y. 2011) .............................................................................. 9

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*
   903 F.2d 176 (2d Cir. 1990) .................................................................................... 16

*Gilkey v. Central Clearing Co.*
   2012 F.R.D. 515 (E.D. Mich. 2001) ........................................................................ 16

*In re American Medical Systems, Inc.*
   75 F.3d 1069 (6th Cir. 1996) ............................................................................ 16, 18

*Ira Holtzman, C.P.A. v. Turza*
   728 F.3d 682 (7th Cir. 2013) .................................................................................... 1

*Jackson v. Sheriff of Cook County*
   2006 U.S. Dist. LEXIS 90742 (N.D. Ill. Dec. 14, 2006) ........................................... 8

*Kalkstein v. Collecto, Inc.*
   304 F.R.D. 114 (E.D.N.Y. 2015) ............................................................................. 8

*Kernats v. Comcast Corp.*
   2010 U.S. Dist. LEXIS 112071 (N.D. Ill. Oct. 20, 2010) ......................................... 24

Case 3:16-cv-01033   Document 44   Filed 05/05/17   Page 3 of 30 PageID #: 693

*Krakauer v. Dish Network L.L.C.*
  311 F.R.D. 384 (M.D.N.C. 2015) .................................................................... 2

*Manno v. Healthcare Revenue Recovery Grp., LLC*
  289 F.R.D. 674 (S.D. Fla. 2013) ..................................................................... 1

*Phillips v. Philip Morris Cos.*
  298 F.R.D. 355 (N.D. Ohio 2014) ................................................................ 7, 8

*Powers v. Hamilton County Pub. Defender Comm'n*
  501 F.3d 592 (6th Cir. 2007) ......................................................................... 23

*Reeb v. Ohio Dep't of Rehab. & Corr.*
  81 Fed. Appx. 550 (6th Cir. 2003) .................................................................. 7

*Rikos v. P&G*
  799 F.3d 497 (6th Cir. 2015) ......................................................................... 20

*Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*
  821 F.3d 992 (8th Cir. 2016) ........................................................................... 2

*Schuh v. HCA holdings, Inc.*
  2014 U.S. Dist. LEXIS 132609 (M.D. Tenn. Sept. 22, 2014) ......................... 7

*Smith v. ComputerTraining.com, Inc.*
  2011 U.S. Dist. LEXIS 7801 (E.D. Mich. Jan. 26, 2011) .............................. 13

*Spurlock v. Fox*
  2012 U.S. Dist. LEXIS 59123 (M.D. Tenn. Apr. 27, 2012) ....................... 9, 13

*Tartt v. Wilson County*
  2012 U.S. Dist. LEXIS 7764 (M.D. Tenn. Jan. 24, 2012) ............................. 16

*Van Swed. Jewelers, Inc. v. 101 VT, Inc.*
  2012 U.S. Dist. LEXIS 133567 (W.D. Mich. Sept. 19, 2012) ......................... 7

*Wal-Mart Stores, Inc. v. Dukes*
  131 S. Ct. 2541 (2011) ............................................................................ 13, 22

*Young v. Nationwide Mut. Ins. Co.*
  693 F.3d 532 (6th Cir. 2012) ................................................................... 20, 22

**Statutes**

47 CFR § 64.1200(a)(2) ..................................................................................... 3

47 CFR § 64.1200(a)(3) ..................................................................................... 3

47 CFR § 64.1200(d) ..................................................................................... 4, 5

iii

47 U.S.C. § 227 ................................................................................................ 1

47 U.S.C. § 227(b) ................................................................................... 2, 3, 23

47 U.S.C. § 227(b)(3) ....................................................................................... 3

47 U.S.C. § 227(c) ............................................................................................ 3

47 U.S.C. § 227(c)(5) ....................................................................................... 4

**Rules**

Fed. R. Civ. P. 23(a) ................................................................................... 6, 13

Fed. R. Civ. P. 23(a)(1) ..................................................................................... 7

Fed. R. Civ. P. 23(a)(2) ................................................................................... 13

Fed. R. Civ. P. 23(a)(3) .............................................................................. 16, 18

Fed. R. Civ. P. 23(a)(4) ................................................................................... 18

Fed. R. Civ. P. 23(b)(3) .......................................................................... 6, 7, 22

**Treatises**

ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS (4th ed. 2002) .................... 9

Pursuant to Federal Rule of Civil Procedure 23, Plaintiff Linda Allard hereby respectfully moves the Court for an order (i) certifying two different Classes of individuals as defined below, (ii) appointing Plaintiff as representative of the Classes, (iii) appointing Jeremy M. Glapion of Glapion Law Firm LLC as counsel for the Classes and (iv) granting such further relief as the Court deems reasonable and just.

## I. INTRODUCTION.

Defendant SCI Direct, Inc., through its brand, The Neptune Society, is one of the country's largest providers of cremation services. As part of its marketing efforts, SCI employees place telemarketing telephone calls, often using a prerecorded voice or an automatic telephone dialing system, to prospective customers. Unfortunately for those customers, however, SCI makes its calls without first obtaining appropriate consent, and without having any written do-not-call policy or training its employees on honoring do-not-call requests. Through that conduct, SCI repeatedly violated two separate provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), a federal statute enacted specifically to protect consumers from calls like those alleged in this case, and to enable customers to successfully stop such calls. As set forth below, there are hundreds of thousands of persons affected by Defendant's practices.

Rule 23 exists precisely to aggregate claims affecting such a large number of persons. Indeed, not only have numerous courts certified similar TCPA class actions, but "[c]lass certification is normal in litigation under § 227." *Chapman v. Wagener Equities, Inc.*, Case no. 09-cv-07299, 2014 U.S. Dist. LEXIS 16866, *9 (N.D. Ill. Feb. 11, 2014) (collecting cases certifying TCPA class actions at p. 55 n. 11); *see also, e.g.*, *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) ("Class certification is normal in litigation under § 227, because the main questions … are common to all recipients."); *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674 (S.D. Fla. 2013) (certifying a class of individuals who received illegal automated

1

calls under the TCPA); *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992 (8th Cir.

2016) (reversing denial of class certification under the TCPA); *Krakauer v. Dish Network L.L.C.*,

311 F.R.D. 384 (M.D.N.C. 2015) (certifying a TCPA class under section 227(c)).

For these reasons and as discussed further herein, Plaintiff Allard now seeks certification

of two different classes:

> **Prerecord Class**: Since October 16, 2013, Plaintiff and all persons within the United States to whose telephone number Defendant SCI Direct, Inc. placed a telemarketing telephone call using CallFire, Inc.'s calling platform when that call was dispositioned as "Answering Machine," "Live Answer," or "Do Not Call."

> **DNC Class**: From May 27, 2012 to May 27, 2016, Plaintiff and all persons within the United States to whose telephone number Defendant SCI Direct, Inc. placed (or had placed on its behalf) two or more telephone calls for telemarketing purposes in a 12-month period.

(collectively, "Classes").[1]

Both Classes satisfy the prerequisites to certification under Federal Rule of Civil Procedure 23,

and the instant motion should therefore be granted in its entirety.

## II.     FACTUAL BACKGROUND.

### A.   **Relevant Provisions of Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*.**

The TCPA provides for private rights of action under two different and separately

actionable provisions. Under 47 U.S.C. § 227(b), no person may "initiate, or cause to be initiated,

any telephone call that includes or introduces an advertisement or constitutes telemarketing, using

an automatic telephone dialing system or an artificial or prerecorded voice to [a cellular telephone

service] … other than a call made with the prior express written consent of the called party[.]" 47

---

[1] Excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families; persons who timely request to be excluded; the legal representatives, successors, or assigns of any excluded person; and Plaintiffs' counsel and Defendant's counsel.

U.S.C. 227(b), regulations promulgated at 47 CFR § 64.1200(a)(2). Section b similarly prohibits telemarketing calls made using a prerecorded or artificial voice to a residential telephone line without prior express written consent. 47 CFR § 64.1200(a)(3). In other words, autodialed *or* prerecorded/artificial telemarketing calls to cell phones are illegal without prior express written consent, but *only* prerecorded/artificial telemarketing calls to residential lines are illegal.[2] "Prior express written consent" is defined as:

> [A]n agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

47 CFR § 64.1200(f)(8)

This agreement must include a "clear and conspicuous" disclosure informing the signatory that:

> By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice[.]

47 CFR § 64.1200(f)(8)(i)(A)

A violation of this provision entitles the person to whom the call was made to $500 (in strict liability) to $1500 (for willful or knowing violations) per call. 47 U.S.C. § 227(b)(3).

The second and separately actionable provision of the TCPA is 47 U.S.C. § 227(c). In addition to creating the national do-not-call registry, section 227(c) requires companies to implement their own internal do-not-call lists, which meets certain minimum standards, *prior* to making any telemarketing calls. These standards were put into place in the TCPA's enacting regulation. *In the Matter of Rules and Regulations Implementing the Telephone Consumer*

---

[2] Because all of the calls made using CallFire used a prerecorded voice, as discussed herein, the class is definition need not distinguish between telephone types.

3

*Protection Act of 1991*, 7 FCC Rcd 8752, 8753 (Oct. 16, 1992) ("TCPA Implementation Order") ("This proceeding was initiated by passage of the Telephone Consumer Protection Act of 1991[.]").

These minimum standards include keeping a written policy, available upon demand, for maintaining a do-not-call list, and that any personnel engaged in any aspect of telemarketing must be informed of and trained in the existence and use of the do-not-call list. 47 CFR § 64.1200(d)(1-2). Unlike 227(b), this provision is equipment and device agnostic. Manually dialed telemarketing calls violate section 227(c) if those calls were made prior to the implementation of the minimum standards. Persons who receive two or more telephone calls in violation of 227(c) in a 12-month period may file suit for $500 (strict liability) to $1500 (willful or knowing) per call. 47 U.S.C. § 227(c)(5). A person can recover damages for *both* violations of § 227(b) and § 227(c) even if the violations occurred in the same telephone call. *Charvat v. NMP, LLC*, 656 F.3d 440, 449 (6th Cir. 2011).

**B.** **Facts Applicable to All Members of the Putative Class.**

SCI Direct, through its brand The Neptune Society, is "the largest provider of affordable cremation services in the nation."[3] Unfortunately, SCI made telemarketing telephone calls to telephones nationwide using an automated telephone dialing system and using a prerecorded voice without prior express written consent (through its use of the CallFire platform). (Am. Compl, ¶¶ 4-7, 18, 32-34.) SCI did not have prior express written consent to make calls using a prerecorded voice or automatic telephone dialing system because none of the materials through which it solicits telephone numbers disclose the possibility of calls made using an automatic telephone dialing system or prerecorded voice. (Exhibit A, Response No. 3.)

---

[3] https://www.neptunesociety.com/about

4

Furthermore, SCI made these calls without having a written do-not-call policy in place and without training its employees on how to treat and honor do-not-call requests, both required prior to a company making any telemarketing telephone calls. 47 CFR § 64.1200(d); (Am. Compl. ¶¶ 40-42; Exhibit A, Response No. 4; Exhibit B, ¶ 42.) And while Defendant has denied that it did not train its employees, documents produced in discovery to date show that not only did Defendant not train its employees on any "do not call" policy, it actively *encouraged* its employees to push back when a person asked Defendant to just mail information to them, or stated that they are not interested. (Exhibit C.) Taken together, these calls violate the two separately actionable provisions of the TCPA discussed above – 47 U.S.C. § 227(b) and 47 U.S.C. § 227(c).

**C. <u>Facts Applicable to Plaintiff Allard.</u>**

In February 2013, Plaintiff Allard provided Defendant with her cellular telephone number on the mailer card shown in Exhibit D, SCI000138. Shortly thereafter, Defendant began placing telemarketing calls to her cellular telephone advertising its services. (Exhibit E, Response No. 1.) All of these calls were telemarketing, and some of the calls were prerecorded. (*Id.*, Responses No. 2 and 5; Exhibit F, Response No. 2.) Ms. Allard never provided consent for prerecorded or autodialed calls, nor could she have, because Defendant never disclosed that its calls may use an automatic telephone dialing system or prerecorded voice. (Exhibit D, SCI000138; Exhibit A, Response to Request for Admission No. 3.)

Furthermore, Ms. Allard asked Defendant on multiple occasions to stop calling, Am. Compl. ¶¶ 22-30, but presumably because Defendant did not have a written do-not-call policy, nor did it train its employees on honoring do-not-call requests, these requests were not honored. (Exhibit A, Response No. 4; Exhibit B, ¶ 42; Exhibit G, Supplemental Response No. 11; Exhibit

H, SCI000184).[4] In addition to asking Defendant's employees to stop calling on several of the calls they made, Ms. Allard made "do not call" requests via voicemail, a complaint to the Better Business Bureau, and email. (Am. Compl. ¶¶ 22-30.) None of these attempts were successful.

Defendant's conduct toward Ms. Allard violates the two separately actionable and recoverable provisions of the TCPA discussed previously. Calls made using a prerecorded voice or artificial dialing system violate section 227(b), and Plaintiff is entitled to recover $500 to $1500 per call. Telemarketing calls made prior to the implementation of certain minimum procedures – including maintaining a written do-not-call list, available upon demand, and training employees on the existence and use of any internal do-not-call list. 47 CFR § 64.1200(d) – violate section 227(c), and Plaintiff is entitled to recover an additional $500 to $1500 per call for these violations.

## III.  THE PROPOSED CLASSES SATISFY EACH OF THE PREREQUISITES FOR CERTIFICATION.

Class certification is appropriate under Federal Rule of Civil Procedure 23 when the proponent of certification demonstrates that each of the requirements of Rule 23(a) and at least one of the subsections of Rule 23(b) has been satisfied. *See Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*,  --- F.3d ---, 2016 U.S. App. LEXIS 22297, *8 (6th Cir. Dec. 15, 2016). Rule 23(a) requires (i) that the proposed class is so numerous that joinder of all individual class members is impracticable (numerosity); (ii) that there are common questions of law and fact amongst class members (commonality); (iii) that the proposed representative's claims are typical of those of the class (typicality); and (iv) that both the named-representative and his or her counsel have and will continue to adequately represent the interests of the class (adequacy). Fed. R. Civ. P. 23(a).

In this case, Plaintiff seeks certification of the proposed Classes under Rule 23(b)(3). To

---

[4] Defendant refers to SCI000184 as evidence of its training, but SCI000184 was created after this litigation was filed, and does not appear to reference telephone calls, but rather, traditional mailers.

6

certify a class under Rule 23(b)(3), there must be questions of law or fact common to the proposed class members, which predominate over any questions affecting only individual members, and the class mechanism must be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

In determining whether to certify a proposed class, a court does not inquire into the merits of the plaintiff's claims. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). As such, in ruling on a Motion for Class Certification, "[a] district court … should accept the complaint's allegations as true." *Reeb v. Ohio Dep't of Rehab. & Corr.*, 81 Fed. Appx. 550, 555 (6th Cir. 2003). "[T]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'" *Schuh v. HCA holdings, Inc.*, Case No. 11-1033, 2014 U.S. Dist. LEXIS 132609, *36 (M.D. Tenn. Sept. 22, 2014) (quoting *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S. Ct. 1184 (2013)) (quotations and alterations in original).

As explained further below, the proposed Classes in this case meet the prerequisites of Rules 23(a), (b)(2), and (b)(3), and therefore should be certified.

## A. **The Numerosity Prerequisite is Satisfied.**

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no minimum number required to satisfy numerosity, nor are plaintiffs required to state the exact number of potential class members. *See Van Swed. Jewelers, Inc. v. 101 VT, Inc.*, Case No. 10-cv-253, 2012 U.S. Dist. LEXIS 133567, *13 (W.D. Mich. Sept. 19, 2012). "Generally, the numerosity requirement is fulfilled when the number of class members exceeds forty." *Phillips v. Philip Morris Cos.*, 298 F.R.D. 355, 362 (N.D. Ohio 2014). Furthermore, "the numerosity requirement is satisfied where the exact size of the class

7

is not known, but general knowledge and common sense indicate that the class is large." *Id.*; *see also, e.g.*, *Kalkstein v. Collecto, Inc.*, 304 F.R.D. 114, 119 (E.D.N.Y. 2015) (A "court may make 'common sense assumptions' to support a finding of numerosity."); *Jackson v. Sheriff of Cook County*, Case No. 06-cv-0493, 2006 U.S. Dist. LEXIS 90742, *8 (N.D. Ill. Dec. 14, 2006). "[T]he sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)." *Christy v. Heritage Bank*, 10-cv-874, 2013 U.S. Dist. LEXIS 182288, *7 (M.D. Tenn. Nov. 8, 2013).

### i. Prerecord Class

Here, discovery shows that SCI utilized a company identified as CallFire to make prerecorded telemarketing telephone calls. (Exhibit I.) Defendant appears to have made several thousand such calls. (*Id.*; Exhibit J) Exhibits I and J alone, which pertain to only one of Defendant's CallFire accounts, in the name of former employee Jon Halprin, support numerosity. As seen in Exhibit I, SCI000187, this CallFire account was set up to play prerecorded messages advertising Defendant's services to persons who "Live Answered" the call or whose "Answering Machine" picked up the call. Through documents produced by CallFire in response to Plaintiff's subpoena, Exhibit J, it appears Mr. Halprin's account was used to place over 7,400 calls.[5] Of these 7,400 calls, over 6,200 were answered (either live or by an answering machine), which would cause the prerecorded message to play.

This call volume is also supported by Mr. Halprin's affidavit, in which he has acknowledged that his branch used CallFire to make thousands of calls. (Exhibit K, Halprin Affidavit ¶ 51.) The calls made through Mr. Halprin's account cover more than 1,800 unique persons, over half of which were called two or more times using CallFire. (Exhibit J.) As such,

---

[5] Calls with a "Ready" disposition are not included in this count.

calls made using Mr. Halprin's account alone support numerosity. *See, e.g.*, *Christy*, 2013 U.S. Dist. LEXIS 182288 (finding numerosity where the proposed class consists of hundreds or thousands of members); *Spurlock v. Fox*, Case No. 09-cv-00756, 2012 U.S. Dist. LEXIS 59123 (M.D. Tenn. Apr. 27, 2012) (finding numerosity where the class numbered in the several thousands); *Engel v. Scully & Scully, Inc.*, 279 F.R.D. 117, 128 (S.D.N.Y. 2011) (numerosity requirement was "comfortably satisfied" where plaintiff estimated, and defendant did not dispute, that defendant processed approximately three to five thousand debit or credit card transactions per year). ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 3:5, 243-46 (4th ed. 2002) ("Class actions under the amended Rule 23 have frequently involved classes numbering in the hundreds, or thousands . . . In such cases, the impracticability of bringing all class members before the court has been obvious, and the Rule 23(a)(1) requirement has been easily met.").

Defendant also had at least eight other CallFire accounts, five of which appear to have actually used CallFire. (Exhibit L.) Records[6] produced for those accounts show that the other eight accounts made more than 12,000 answered calls to more than 10,000 unique persons. Over 2,500 of these persons received two or more calls.[7]

Accordingly, the proposed Prerecord Class satisfies the numerosity requirement.

### ii. DNC Class

Defendant has stated that it has received 362,616 leads from October 16, 2013 through May 27, 2016 (which is 17-months narrower than the class period for the DNC Class). (Exhibit F,

---

[6] Because Mr. Halprin's account alone plainly supports numerosity, and for the privacy of putative class members and efficiency – these records would add hundreds of more pages of exhibits – Plaintiff does not attach these records here, but both parties have these records.

[7] This is also relevant for the DNC class, because it means that the CallFire numbers alone support numerosity for the DNC class.

Supplemental Response No. 9.) Furthermore, Defendant has admitted to placing "at least one phone call to at least 4,000 unique telephone numbers from May 27, 2012 to May 27, 2016." (Exhibit A, Response No. 15.) Plaintiff's requests for admission did not go higher than 4,000.

Plaintiff recognizes that the DNC Class is restricted to those who received two or more calls in any 12-month period, rather than those who received just one call. Based on the results of a subpoena to Velocify, Defendant's cloud-based lead management provider, it appears that during the class period, Defendant made two or more calls in a 12-month period to 585,195 persons,[8] and that Defendant made over 4.1 million calls[9] to these persons. This plainly satisfies numerosity. There are also several other indications that the number of persons who received two or more calls will satisfy the numerosity requirement.

**First**: Mr. Halprin's Affidavit. In Mr. Halprin's affidavit, he stated that his branch used CallFire to make thousands of calls. (Exhibit K, Halprin Affidavit ¶ 51.) Mr. Halprin also stated that CallFire was not used to make the initial call, but was used only after the sales team had previously called the leads but were unsuccessful in making contact. (*Id.* at ¶¶ 49-50.) Taken together, this indicates that the more than 7,400 calls Mr. Halprin's branch made using CallFire were at least second calls, making each of those call targets a likely DNC Class member. Mr. Halprin further stated that the sales team frequently placed multiple telephone calls to the same

---

[8] Exhibit S is a screenshot of the database showing all leads that received two or more calls within a 12-month period. Each LeadId indicates a unique person. Therefore, the total number of records in this database – shown at the bottom of the screenshot as 585,195 – is the total number of putative class members for the 227(c) class. Though not shown here, this database also tracks the number of calls to that particular lead and the lead's first and last name, city and state, and phone number.

[9] Exhibit T is a screenshot of the database showing all call actions with respect to particular leads. As can be seen, this database shows the call target's unique LeadId, and the "Action date" for each particular call "Action." Because each "Action" reflects a "CALL" disposition, the total number of records contained in this database (seen at the bottom where it shows 4,109,276 records) reflects the total number of calls.

10

lead – up to 70% of leads – and that during his time as Branch/Sales Manager, the sales team placed more than one telephone call to well over 1000 different persons. (*Id.* at ¶¶ 31-33.) Finally, Mr. Halprin's affidavit claims that all of the calls made by the sales team were made with the ultimate goal of making a sale of Defendant's services. (*Id.* at ¶ 30.) This makes them telemarketing. These statistics alone are sufficient to support numerosity.

**Second**: Other statistics from Mr. Halprin's CallFire account. In Exhibit I, SCI000193, during one calling campaign alone, ten contacts are listed as "Pending Retry: 4 Past Attempts" which appears to indicate that those ten contacts had been called with CallFire four times previously. There are an additional seven contacts listed as "Pending Retry: 1 Past Attempt" which appears to indicate that those numbers were set to be called again. Further, manually examining the number of repeat calls in the CallFire documents show more than 40 persons called more than once just with CallFire *on one day alone*. (Exhibit M.)

**Third**: Plaintiff's own lead history. Defendant received Plaintiff's mailer card on or about February 11, 2013. (Exhibit E, Response No. 6.) Within 24 hours, Defendant had called Plaintiff twice: February 11, 2013 at 4:13 PM, which Plaintiff did not answer, and February 12, 2013 at 3:55 PM, which Plaintiff also did not answer. (Exhibit N.) There is no reason to think that Plaintiff Allard's treatment was special or abnormal. Instead, it is far more likely that Defendant made a habit of – even if not reduced to formal policy – following up with new leads multiple times in an effort to sell its product. Ms. Allard's treatment is also consistent with Mr. Halprin's affidavit.

**Fourth**: Publicly available complaints. The internet is full of complaints about Defendant's calling practices. For example, there are numerous complaints on the Better Business Bureau's

website.[10] A March 14, 2016 complaint states[11] that "[e]ven tho I told them I told them approx. 15 years ago that I had made other plans they continue to harass me-phoning and not answering or hanging up." A March 1, 2016 complaint asks Neptune Society to "stop telephoning us daily. We are seniors and do not need this aggravation sick and tired of constant phone calls here in Naples Florida. Have repeatedly told them not to call and they persist on calling daily."[12] An October 2015 complaint writes "[u]nwanted solicitation calls – frequent calls after I've told them to stop calling[.]" A February 27, 2015 complaint states "[d]espite numerous emails and phone complaints they won't stop calling me and trying to sell me cremation services …. They have continued to call me several times a month about new cremation services[.]" A February 10, 2015 complaint states "[c]onstant phone calls to my home phone[.] They won't stop calling my phone number. When they do call, they never leave a message and when I do speak to them and ask that they stop calling, they either hang up on me or agree to stop calling, but continue to do so." An August 2014 complaint states that "Neptune Society continues to contact me by phone and I continue to tell them not to contact me again. The last phone call I received … was an automated call telling me I still had time to sign up before prices were raised." These are just a sampling.

There is similarly at least one Yelp review of Neptune Society in Sherman Oaks, California in which a "Chris D." writes that "Neptune Society spam calls the elderly. They have called our house repeatedly, despite being told to stop."[13]

---

[10]   https://www.bbb.org/south-east-florida/business-reviews/cremation-services/neptune-society-in-plantation-fl-7622/reviews-and-complaints
[11] All such complaints in this paragraph are transcribed without correction.
[12] The Naples branch is one Mr. Halprin stated he believed to be using CallFire. (Exhibit K, Halprin Affidavit ¶ 61.)
[13] https://www.yelp.com/biz/neptune-society-sherman-oaks-3?q=spam

And if those were not enough, the website 800notes.com has catalogued dozens, if not hundreds, of complaints about Defendant's calling practices. For one telephone number, 800notes.com lists 10 complaints in the class period, all repeating some variation of Neptune Society calling repeatedly.[14] For another Neptune Society number, there are approximately two dozen complaints within the Class period, including one stating "[d]amn Neptune society calls me several times a week, every week. They've done this for the last three years."[15] And there are other numbers that appear linked to a third-party company doing telemarketing for the Neptune Society. For example, telephone number 714-937-1555 appears to belong to a company called "Golden Media," but most of the dozens of complaints during the Class period claim that the caller was calling on behalf of the Neptune Society.[16]

In light of the above, numerosity is met for the DNC Class.

### B. __The Commonality Prerequisite is Satisfied.__

Next, Rule 23(a) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires that the claims of the class "depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) Further, "[w]hen the legality of the defendant's standardized conduct is at issue, the commonality factor is usually met." *Smith v. ComputerTraining.com, Inc.*, Case No. 10-cv-11490, 2011 U.S. Dist. LEXIS 7801 (E.D. Mich. Jan. 26, 2011). This inquiry seeks "not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate

---

[14] http://800notes.com/Phone.aspx/1-520-226-3005
[15] http://800notes.com/Phone.aspx/1-954-666-3138
[16] http://800notes.com/Phone.aspx/1-714-937-1555/3

13

common *answers* apt to drive the resolution of the litigation." *Spurlock*, 2012 U.S. Dist. LEXIS 59123 at *11 (citations omitted; emphasis in original).

### i. Prerecord Class

Commonality is easily met here. Defendant's conduct gives rise to several common questions of both law and fact. The common questions for the Prerecord Class include: (i) whether Defendant had a practice of obtaining consent in a way sufficient to satisfy "prior express written consent"; (ii) whether Defendant's calls made through CallFire used a prerecorded voice or an automatic dialing system; (iii) whether Defendant placed calls to persons who did not previously provide Defendant with prior express written consent to receive such calls[17]; and (iv) whether members of the Prerecord Class are entitled to treble damages based on the willfulness of Defendant's conduct. Answers to any of these questions are equally relevant to all putative Class members, and would drive the resolution of this litigation.

For example, Defendant has already admitted that none of the materials upon which it obtained phone numbers contained the mandated disclosures about the use of automatic telephone dialing systems or artificial or prerecorded voice calls. (Exhibit A, Response No. 3.) Defendant has further admitted that it has no records of obtaining leads through any other written methods than those produced and which lack the required disclosures. (Exhibit O, Response No. 2.) As a result, should it be adjudicated that Defendant did not implement any process through which it could obtain legally sufficient prior express written consent, every person who received an

---

[17] There is no reference to "consent" in the class definition because to qualify as "prior express written consent" under the TCPA, certain disclosures must be made, and Defendant has conceded that none of its materials contain such disclosures. Accordingly, any telemarketing call made using an automatic telephone dialing system or prerecorded voice was necessarily made without adequate legal consent, because none of Defendant's materials enable it to obtain such consent. This is still a common question, it is just commonly answered as "yes."

14

autodialed or prerecorded telemarketing call from Defendant would have a viable TCPA claim. That leads to the second common question. "Prior express written consent" is only relevant for calls made using an autodialer or prerecorded voice. If none of Defendant's calls using CallFire were made in such a manner, the Class would cease to exist, and there would be no one with a claim. If Defendant made some calls in such a manner, then all of the persons who received such calls would have a viable claim (because Defendant, as a policy, did not obtain proper written consent). These questions are all susceptible to generalized proof, and can be answered for the entire class by reviewing the exact same evidence regarding CallFire's capabilities and uses. The questions to be answered are no different or more complicated here than they would be if each of the tens of thousands of members of the putative Prerecord Class brought their own individual claims.

### ii. DNC Class

Commonality is similarly satisfied for the DNC Class. The common questions for the DNC Class include: (i) whether during the Class period Defendant had a written policy for maintaining a do-not-call list; (ii) whether during the Class period Defendant trained its personnel engaged in any aspect of telemarketing on the existence and use of the do-not-call list; (iii) whether Defendant placed calls for telemarketing purposes; and (iv) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct. Like the Prerecord Class, answers to any of these questions will drive a resolution of the litigation. Defendant's own policies and procedures – what written do-not-call policies it maintained, what training it provided – do not change from class member to class member. The answers to these questions are either "yes" or "no", and the answers would not change from person to person. And if Defendant either did not have a written do-not-call policy (which it has admitted it did not, see Exhibit A, Response No. 4,

15

and Exhibit B, ¶ 42), or did not train its personnel on its internal do-not-call list, then every single telemarketing call Defendant made during the class period was made in violation of the statute, and every person who received two or more such calls has standing to recover for such a violation.

Accordingly, Rule 23(a)(2)'s commonality requirement is met for both proposed Classes.

## C. **Plaintiff's Claims are Typical of the Class's Claims.**

Typicality—the next prerequisite under Rule 23—requires that Plaintiff's claims be typical of those of the other members of the Class. Fed. R. Civ. P. 23(a)(3). The typicality requirement is closely related to the commonality requirement and is satisfied if a plaintiff's claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of the other class members, and if his or her claims are based on the same legal theory." *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996). Indeed, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Tartt v. Wilson County*, Case No. 09-cv-1179, 2012 U.S. Dist. LEXIS 7764, *19 n.5 (M.D. Tenn. Jan. 24, 2012). Even if some individualized questions remain after the common questions have been resolved, a class action is still permissible, so long as the claims of the named plaintiff share the same essential characteristics as those of the class. *See, e.g.*, *Gilkey v. Central Clearing Co.*, 2012 F.R.D. 515, 522 (E.D. Mich. 2001); *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990).

### i. **Prerecord Class**

In this case, Plaintiff and the proposed members of the Prerecord Class were each subjected to the exact same conduct. That is, Plaintiff and the Prerecord Class each received telemarketing telephone calls using a prerecorded voice and/or automatic telephone dialing system to their telephones without providing prior express written consent. As Defendant stated, calls to Plaintiff on August 4, 2014 and September 17, 2014 were made using a prerecorded or artificial voice via

16

CallFire. (Exhibit B, Response No. 2.) The voice files[18] show that they were also telemarketing, stating:

> Hello. This is Kevin from the Neptune Society. Recently, you mailed us a response card requesting information about our cremation preplanning. Sorry we missed you in our first attempt, but you still have time to take advantage of our current plan before the price increase takes effect in late August. Neptune Society works as the most responsible arrangement you will make for your loved ones. Please call Kevin at 615-545-5541 for a visit.

> (Exhibit P.)

and

> Greetings. This is the Neptune Society. Recently, you met with us to discuss cremation pre-planning. Currently, we are running a special of 0% which will save you money. It's time to take advantage of our current plan before the price increase takes effect in October. Neptune is the most responsible arrangement you will make for you and your loved ones. Call us at 615-373-6946. This offer will expire in a couple of days. Don't hesitate. 615-373-6946.

> (Exhibit Q.)

In addition, Plaintiff provided her telephone number on a mailer form that, like all of Defendant's "intake" materials, lacked the required disclosures regarding an autodialer or a prerecorded voice. (Exhibit D.) Accordingly, the calls to Plaintiff are directly aligned with that of the Prerecord Class.

### ii. DNC Class

For similar reasons, Plaintiff Allard's claims are typical of the claims of the DNC Class. All of the calls to Plaintiff fall within the defined Class period and all were telemarketing (including the two prerecorded calls, which occurred within 12-months of each other). Further, these calls were made prior to this litigation, a period during which Defendant concedes, at

---

[18] Due to a now-clarified misunderstanding in discovery, the voice files and transcripts in this amended memorandum differ from those in the original memorandum. The corrected voice files for Exhibits P and Q have been mailed to the Court on a USB flash drive.

minimum, it did not have a written do-not-call policy (and during which Plaintiff contends that Defendant did not train its employees on the any internal do-not-call list).

Accordingly, Rule 23(a)(3)'s typicality prerequisite is satisfied.

### D. <u>The Adequacy of Representation Prerequisite is Satisfied.</u>

For this section, both Classes will be treated together, as there does not seem to be a difference in analysis required. Rule 23(a) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This inquiry 'serves to uncover conflicts of interests between named parties and the class they seek to represent.'" *Christy*, 2013 U.S. Dist. LEXIS 182288 at *10 (citing *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007)). This inquiry has two components: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Id.* (citing *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079).

In this case, as set forth in the commonality section, Plaintiff has suffered the same conduct and has the same interests as the proposed members of both Classes. She has suffered the same injury, has the same claims available to her, and has no interests antagonistic to those of the Classes. She will fairly and adequately protect the interests of the Classes and her pursuit of the instant action demonstrates as much. Plaintiff further only intends to seek statutory damages, "which functionally glues the class together by making much individual proof unnecessary" and supports her position as representative for the Classes. *Id.* at *12. Plaintiff has also previously rejected Defendant's offers of individual settlement because her desire from the beginning has been to see this through as a class action in order to hold Defendant accountable on behalf of all putative class members. (Exhibit R.)

18

Similarly, proposed class counsel, Jeremy M. Glapion, will vigorously protect and work for the interests of the Class. Attorney Glapion has extensive experience in TCPA actions, both class and individual. Since founding The Glapion Law Firm in May 2015, Attorney Glapion has been appointed co-lead counsel in *Willis et al. v. IHeartMedia, Inc.*, Case No. 16-CH-02455 (Cook County, Feb. 19, 2016), a TCPA case in which the court granted preliminary and final approval to an $8.5 million non-reversionary class action settlement, which was successfully and efficiently administered. Attorney Glapion has also initiated and is currently litigating several other putative TCPA class action cases, including *Griffith v. ContextMedia, Inc.*, 16-cv-2900 (N.D. Ill. 2016), *Estey v. ADT*, Case No. 16-cv-3141 (N.D. Georgia 2016) and *Evans v. National Auto Division*, Case No. 15-cv-8714 (D.N.J. 2015). Since May 2015, Attorney Glapion has also recovered well over $1m for his clients in over 75 individual TCPA cases.

Attorney Glapion previously worked in the New York office of Lieff, Cabraser, Heimann & Bernstein, where he primarily worked as an associate on consumer protection cases, including several high profile TCPA class cases such as *Henrichs v. Wells Fargo Bank, N.A.*, 13-CV-05434 (N.D. Cal.) and *Ossola v. American Express Co.*, 13-cv-04836 (N.D. Ill.); *Balschmiter v. TD Auto Finance, LLC*, 13-cv-01186 (E.D. Wisc.), and several other non-TCPA class actions. *See, e.g.*, *Denis Gray Trucking, Inc. et al. v. Navistar International Corporation*, 14-cv-5249 (N.D. Ill.); *Weske et al. v. Samsung Electronics America, Inc.*, Case No. 10-4811 (D.N.J.). In addition to his time at The Glapion Law Firm and Lieff Cabraser, Attorney Glapion graduated Harvard Law School 2012, worked an associate at Gibson, Dunn & Crutcher, and clerked for The Honorable Freda L. Wolfson in the District of New Jersey.

As such, Plaintiff and her counsel have, and will continue to, adequately represent the Class, and Rule 23's adequacy prerequisite is met.

### E. **The Classes are Ascertainable.**

"Before a court may certify a class pursuant to Rule 23, the class definition must be sufficiently definite so that it is administratively feasible for the Court to determine whether a particular individual is a member of the proposed class." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-38 (6th Cir. 2012). Ascertainability simply means that "the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria." *Rikos v. P&G*, 799 F.3d 497, 525 (6th Cir. 2015). This is a much more relaxed standard than that found in, for example, the Third Circuit, and is in line with that found in the Seventh, Eighth, and Ninth circuits. Both classes proposed here are ascertainable.

#### i. **Prerecord Class**

For reference, the Prerecord Class is defined as:

> **Prerecord Class**: Since October 16, 2013, Plaintiff and all persons within the United States to whose telephone number Defendant SCI Direct, Inc. placed a telemarketing telephone call using CallFire, Inc.'s calling platform when that call was dispositioned as "Answering Machine," "Live Answer," or "Do Not Call."

This Class definition is both definite and relies upon objective criteria to determine membership. The date is definite. Defendant, or third party vendors Defendant used, appears to keep records of the telephone numbers called. Defendant also claims to have only called "persons who have first submitted their contact information to SCI[.]" (Exhibit A, Response No. 4.) Therefore, Defendant knows the identifies of all persons to whom it placed calls. If Defendant does not have records of a particular person's identity, that identity can be found based on nothing more than their telephone number. All of Defendant's calls to its leads qualify as "telemarketing." The issue of consent – which could theoretically inject subjectivity into a case in other contexts – is not at issue here, because consent comes down to whether any of Defendant's materials contained the proper disclosures, which Defendant admits they did not. Put simply, the Court will be able to determine

membership in the Prerecord Class based on nothing more than a person's name and/or telephone number, all through reference to records maintained by Defendant or its third-party vendors, and without reference to any subjective criteria.

### ii. DNC Class

For reference, the proposed DNC Class is defined as:

**DNC Class**: From May 27, 2012 to May 27, 2016, Plaintiff and all persons within the United States to whose telephone number Defendant SCI Direct, Inc. placed (or had placed on its behalf) two or more telephone calls for telemarketing purposes in a 12-month period

Much of the above analysis applies equally here, and this Class definition is even simpler: anyone who received two or more telemarketing calls from Defendant in 12-months is a member. All of this information can be found in Defendant's records (an example of which is shown in Exhibit N, or records of third-parties Defendant used, examples of which are shown in Exhibits I and J). As before, the Court can determine membership in the DNC Class based on nothing more than a person's name and/or telephone number. Indeed, the database shown in Exhibit S, which is a list of everyone who received two or more telephone calls within a 12-month period according to Defendant's lead management software, tracks that person's name, phone number, city, and state. Thus, no subjective inquiries are required to determine class membership. If Defendant did not have a written do-not-call policy or train its employees on its do-not-call list, all persons in this list are class members and have a viable TCPA claim. Ascertainability is met here.

### F. **The Proposed Classes Also Satisfy Rule 23(b)(3).**

Plaintiff seeks certification of the Classes under Rule 23(b)(3), which provides that a class action may be maintained where the questions of law and fact common to members of the class predominate over any questions affecting only individual members, and the class action mechanism is superior to other available methods for the fair and efficient adjudication of the

21

controversy. Fed. R. Civ. P. 23(b)(3).

Rule 23(b)(3)'s "predominance requirement looks to whether the proposed class is 'sufficiently cohesive' to warrant 'adjudication' by representation." The Rule 23(b)(3) "'predominance inquiry' is meant to 'tes[t] whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Wal-Mart*, 131 S. Ct. at 2566. To satisfy this requirement, "a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *Beattie*, 511 F.3d at 564.

The superiority requirement strikes at the very heart of the class action mechanism: "to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Young*, 693 F.3d at 545." "In determining whether a class action is a superior method, the Court may look to (1) the class members' interest in individually controlling their separate actions; (2) the extent and nature of existing litigation by class members concerning the same claims; (3) the desirability of concentrating the litigation in a particular forum; and (4) the likely difficulties of managing a class action." *Christy*, 2013 U.S. Dist. LEXIS 182288 at *19 (citing Fed. R. Civ. P. 23(b)(3)).

Both proposed Classes satisfy the predominance and superiority requirements.

### i. Prerecord Class

1. <u>Common Questions of Law and Fact Predominate.</u>

Not only are *some* of the issues for the Prerecord Class subject to generalized proof, virtually *all* of them are. The capabilities and use of CallFire is subject to generalized proof. The purpose for which Defendant placed calls is subject to generalized proof.[19] Indeed, calls made

---

[19] Defendants in other cases have argued that the purpose for which a call was made is a subjective inquiry. However, Defendant is in the business of selling its services, and it is difficult to see other

using CallFire all used a prerecorded voice, for which transcripts are available and which make clear that the calls were telemarketing. Defendant's methods for soliciting and obtaining telephone numbers is subject to generalized proof. Every issue relevant to this Class is subject to the same generalized proof as it would be in individual litigation. Any possible issues related to consent are avoided because the specific requirements for "prior express written consent" involve disclosures that Defendant simply did not make on any of the materials through which it obtained telephone numbers. Nor are there issues regarding the *receipt* of any calls, as the TCPA makes it unlawful to "make" or "initiate" a call, 47 U.S.C. § 227(b)(1)(A-B).

Accordingly, the predominance requirement is satisfied for the Prerecord Class.

2. <u>The Class Action Mechanism is Superior to Other Available Methods for the Litigation of this Matter.</u>

Absent class treatment in this case, each individual member of the Prerecord Class would be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judicial system and the litigants. Such a result would be neither efficient nor fair to anyone, including Defendant. Moreover, there is no indication that members of the Class have a strong interest in individual litigation, let alone any incentive to pursue their claims individually, given the small amount of damages likely to be recovered relative to the

---

reasons why it may have called. Mr. Halprin's affidavit also states that all of the sales team calls at his branch were for the purpose of making a sale. (Exhibit K, Halprin Affidavit, ¶ 30.) If the Court has concerns, both Class definitions can be reworked as the case progresses. *See, e.g.*, *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) ("[D]istrict courts have broad discretion to modify class definitions, so the district court's multiple amendments merely showed that the court took seriously its obligation to make appropriate adjustments to the class definition as the litigation progressed."). Further, any concerns about one-off non-telemarketing calls leading to slightly overbroad or over-inclusive class definitions should not defeat class certification, as persons can be excluded or subclasses created later. *Coleman v. GM Acceptance Corp.*, 220 F.R.D. 64, 90-91 (M.D. Tenn. 2004); *see also Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997).

23

resources required to prosecute such an action. Indeed, Plaintiff is aware of no other TCPA litigation currently pending or previously filed against Defendant,[20] and Defendant has stated that it has not been involved in any such lawsuits previously. (Exhibit E, Response No. 13.) Furthermore, class certification will promote consistency of rulings and judgments, giving all parties the benefit of finality. Accordingly, the superiority requirement is also satisfied for the Prerecord Class.

### ii. DNC Class

#### 1. Common Questions of Law and Fact Predominate.

Just as with the Prerecord Class, virtually all of the issues relevant to the DNC Class are subject to generalized proof. These claims arise from Defendant's failure to implement the required procedures and training prior to making any telemarketing telephone calls. Whether Defendant maintained a written do-not-call policy or trained its employees on its do-not-call policy are quintessential "generalized proof" issues. Where "a class challenges a uniform policy or practice, the validity of that policy or practice tends to be the predominant issue in the ensuing litigation." *Kernats v. Comcast Corp.*, Case No. 09-cv-3368, 2010 U.S. Dist. LEXIS 112071, *23 (N.D. Ill. Oct. 20, 2010). Such is the case here: the adequacy (or lack thereof) of Defendant's policies predominates over any other issue relevant to the DNC Class.

For these reasons, the predominance requirement is satisfied for the DNC Class.

#### 2. The Class Action Mechanism is Superior to Other Available Methods for the Litigation of this Matter.

For the same reasons set forth with respect to the Prerecord Class, the class action mechanism is superior for the DNC Class. There is little incentive for individual members (many

---

[20] Plaintiff's counsel may bring a second similar action in the very near future, but this is not yet on file.

24

of whom are elderly) to pursue an action on their own and, indeed, no one else has sued Defendant over its calling practices. Fairness, efficiency, and finality favor treating this as a class action.

## IV.    CONCLUSION.

For the reasons stated above, this case is appropriate for class certification. Accordingly, Plaintiff Allard, individually and on behalf of the proposed Classes, respectfully requests that the Court (i) certify the Prerecord Class and the DNC Class, defined herein (ii) appoint Plaintiff as representative of the Classes, (iii) appoint Jeremy M. Glapion of The Glapion Law Firm LLC as counsel for the Classes, and (iv) grant such further relief as the Court deems reasonable and just.

Respectfully submitted,

**LINDA ALLARD**, individually and on behalf of all others similarly situated,

Date: May 5, 2017

s/ Jeremy M. Glapion
Jeremy M. Glapion
**THE GLAPION LAW FIRM, LLC**
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732.455.9737
Fax: 732.709.5150
jmg@glapionlaw.com

T. Blaine Dixon
**KENNEDY LAW FIRM, PLLC**
127 South Third Street
Clarksville, Tennessee 37040
Tel: 931-645-9900
Fax: 931-920-3300
bdixon@klflaw.net