UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| **LINDA ALLARD**, on behalf of herself and all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>**SCI DIRECT, INC. d/b/a NEPTUNE SOCIETY**,<br><br>     Defendant. | CIVIL CASE NO: 16-1033<br>JUDGE DRAIN<br>MAGISTRATE JUDGE HOLMES |

**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

## I. Introduction

Two inescapable principles – endorsed by the Sixth Circuit – expose the faulty premise on which Defendant's opposition is based, and are fatal to all of its arguments:

1. "Consent" as it pertains to prerecorded or autodialed telemarketing calls under 227(b) is specifically defined and requires specific disclosures in order to be effective. Under 227(b), if a party wants to make prerecorded or autodialed telemarketing calls to a person, merely obtaining that person's phone number is not enough. A caller may only make prerecorded/artificial voice or autodialed telemarketing calls if, in the course of obtaining the telephone number to be called, it disclosed, clearly and conspicuously, in writing, the possibility that the calls would be made using an artificial/prerecorded voice or an autodialer. The Sixth Circuit has emphasized this requirement. *Hill v. Homeward Residential*, 799 F.3d 544, 552 (6th Cir. 2015). Defendant admits that it did not make such disclosures. Therefore, it did not have consent – as defined under the law – to make any telemarketing calls using a prerecorded/artificial voice, and there are thus no individualized issue of consent.

2. Neither consent nor revocation are relevant to a claim under 227(c) for an entity's failures to implement – prior to initiating any telemarketing calls – certain procedures to allow call recipients a meaningful opportunity to revoke consent, should they so choose. Initiating a telemarketing call without the procedures is a violation. *Charvat v. GVN Mich., Inc.*, 561 F.3d 623, 632 (6th Cir. 2009). Indeed, such defenses would be illogical. For example, it is completely circular for Defendant to argue that revocation is an individualized question because it does not know who may have revoked when the entire 227(c) claim herein is based on Defendant's failures to ensure that people *could* effectively revoke and that records would be kept.

## II. Discussion

   a. <u>Commonality, Typicality, and Predominance.</u>

Though Defendant discusses these three aspects of Rule 23 separately, it makes the same arguments for each. Its arguments, all based on an intentional mischaracterization of Plaintiff's claims as being based on "revocation", must fail. Neither Plaintiff's claims, nor the claims of putative class members, depend on revocation. Defendant would be liable to Plaintiff and the class even without any allegations of revocation, because Defendant never had legally-sufficient consent in the first place, and because consent is irrelevant to a 227(c) claim.

Specifically, Defendant first reiterates the argument it made in its Motion for Summary Judgment that section 227(c) of the TCPA is against the purposes of the TCPA. This has been previously addressed at length, and need not be here. (Dkt. 38, pp. 20-22.)

Defendant then reaches the crux of its argument, stating that some of the call recipients wanted – and even acted on – the calls, and that "persons who knowingly release their telephone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." Therefore, Defendant's argument goes, because class members gave their phone numbers, they all gave consent, and because they gave consent, they must prove revocation to have a case, which creates too many individualized issues to warrant class treatment. But this is not an accurate summary of the law pertaining to artificial/prerecorded or autodialed telemarketing calls. Merely providing one's phone number is *not* consent under the law for such calls. As the Sixth Circuit wrote in the 227(b) context in *Hill*:

> [A] debtor does not need to give his consent to automated calls specifically; his general consent to being called on a cell phone constitutes "prior express consent." The FCC's regulations for telemarketers now require a more specific type of consent – namely, that the called party consents, in writing, to being called *by an*

2

*auto-dialer*.

*Hill*, 799 F.3d at 552 (emphasis in original). Courts nationwide are unanimous on this point. *See, e.g.*, *Perri v. Rescue 1 Fin., LLC*, Case No. CV-15-00287, 2015 U.S. Dist. LEXIS 95717, *1-2 (C.D. Cal. July 22, 2015); *Soular v. Northern Tier Energy LP*, Case No. 15-cv-556, 2015 U.S. Dist. LEXIS 112294, *16-17 (D. Minn. Aug. 25, 2015); *Lennartson v. Papa Murphy's Holdings, Inc.*, Case No. C15-5307, 2016 U.S. Dist. LEXIS 725, *7 (W.D. Wash. Jan. 5, 2016). Defendant has admitted that none of the materials through which it obtained telephone numbers contained the required disclosures. (Exhibit A, Response 3.) Accordingly, Defendant *did not have* legally-sufficient consent to make autodialed or artificial/prerecorded calls, which are the only types of calls at issue. Without such legally-sufficient consent, there is no need to discuss or prove revocation. Plaintiff and class members prevail on the 227(b) claim if Defendant's materials did not maintain the mandated disclosures and Defendant made autodialed or prerecorded telemarketing calls to them.

Defendant's "consent" arguments are even more misplaced when it comes to 227(c). Section 227(c), through regulations promulgated at 47 CFR § 64.1200(d), prohibits an entity from "initiat[ing] any call for telemarketing purposes" prior to implementing procedures meeting certain minimum standards. The Sixth Circuit has addressed this type of claim, writing that "[t]he 'violation of the regulations' is therefore the initiation of the phone call without having implemented the minimum procedures." *Charvat*, 561 F.3d at 632; *see also Charvat v. Dfs Serv. LLC*, 781 F. Supp. 2d 588, 592 (S.D. Ohio, 2011). There is no "consent" defense.[1] This absence of a consent defense appears intentional, because "prior express invitation or permission" *is*

---

[1] In addition, a "consent" defense to a claim involving failures to implement procedures to allow for a person to stop calls makes little sense. First, it allows a company to avoid class action liability by doing the very thing the law prohibits (not maintaining the minimum internal do not call procedures). Second, "they said we could call" does not mean that a company does not still have to implement procedures to potentially allow those persons to tell the company to stop.

3

explicitly a defense to another type of claim under section 227(c) related to the failure to honor the *national* "Do Not Call" list (which is not at issue here). 47 CFR § 64.1200(c)(2)(ii). Congress and the FCC were therefore capable of allowing for a "consent" defense, and thus, by not allowing for one with respect to claims based on failures to implement *internal* "do not call" procedures, intentionally chose not to do so.

If this argument is an attempt to garner sympathy, or to portray this as a "gotcha" case, it is misguided. This is not a case of an otherwise good actor being unfairly persecuted. Defendant is in a business that overwhelmingly involves dealing with elderly persons regarding a highly emotional topic. Entire studies have been written about the vulnerability of the elderly population to telemarketing fraud and scams.[2] Defendant *must* have known it was dealing with a sensitive issue and with a population that might be more susceptible to high-pressure, aggressive sales tactics. But rather than recognize this responsibility and avoid aggressive tactics, Defendant sought to take advantage, going so far as to instruct its employees to guilt elderly individuals into thinking they would be abandoning their loved ones if they did not buy Defendant's services. It also not only failed to honor oral or written revocations of consent – the internet is replete with complaints about Defendant's unstoppable calls – but it failed to honor death, as its records show that it placed over 16,000 calls (cumulatively) to over 5,000 persons after it had marked those persons as "deceased."

Accordingly, because Defendant admittedly failed to obtain legally sufficient consent to make autodialed or prerecorded calls pursuant to section 227(b), and because consent has no bearing on section 227(c), there is no need to prove "revocation" of consent, nor are there any issues establishing lack of consent on a class-wide basis. There are literally no individualized

---

[2] http://www.ncpc.org/topics/crime-against-seniors. That is not to say that Defendant is committing fraud or scamming anyone. By most accounts, Defendant offers a needed service and generally delivers what it promises.

4

inquiries necessary to either claim.

      b. <u>Adequacy</u>

Defendant would have the Court find Plaintiff Allard to be an inadequate representative because she was offended by Defendant's calls. Notwithstanding the fact that Defendant's position has the perverse effect of making the act of filing a lawsuit enough to call into question a plaintiff's adequacy – people who sue tend to be the most offended by the conduct about which they sue – Defendant's argument fails on its own. All class members have an interest in holding Defendant accountable for its violations of the law. Plaintiff Allard, as someone who felt, and continues to feel, personally aggrieved by these violations, is *more* inclined to provide strong representation to the class than someone who may not have cared as much. The truism that some people were more offended than others within the class does not make Ms. Allard inadequate, especially since this is a statutory damages case.

Defendant also argues that because Plaintiff's counsel was retained by a different plaintiff in a different state to file a separate case, this somehow reflects upon the adequacy of Ms. Allard. Plaintiff's counsel's reasons for agreeing to represent multiple plaintiffs should be obvious: Defendant is in the business of attempting to sell *cremation* services to people Defendant believes are actively considering their mortality. While Ms. Allard remains in excellent health mentally and physically, and God willing will continue to remain so for many years to come, Plaintiff's counsel, as part of his duty to a putative class likely to be overwhelmingly made up of elderly individuals, believes it is prudent to "diversify" representation.

## III. Conclusion

Plaintiff's Motion should be granted in its entirety.

5

Case 3:16-cv-01033   Document 51   Filed 06/09/17   Page 6 of 7 PageID #: 1069

Dated: June 9, 2017                              */s/ Jeremy M. Glapion*
                                                 Jeremy M. Glapion
                                                 **THE GLAPION LAW FIRM, LLC**
                                                 1704 Maxwell Drive
                                                 Wall, New Jersey 07719
                                                 Tel: 732.455.9737
                                                 Fax: 732.709.5150
                                                 jmg@glapionlaw.com

                                                 T. Blaine Dixon
                                                 **KENNEDY LAW FIRM, PLLC**
                                                 127 South Third Street
                                                 Clarksville, Tennessee 37040
                                                 Tel: 931-645-9900
                                                 Fax: 931-920-3300
                                                 bdixon@klflaw.net