UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

LINDA ALLARD,

    Plaintiff,

v.

SCI DIRECT, INC.,

    Defendant.

Case No. 16-cv-01033

HONORABLE GERSHWIN A. DRAIN
SITTING BY SPECIAL DESIGNATION

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#33]

### I. INTRODUCTION

Plaintiff, Linda Allard, filed the instant action against Defendant, SCI Direct, Inc. ("SCI") on May 27, 2016, asserting violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C § 227(b) and § 227(c). Presently before the Court is SCI's Motion for Summary Judgment, filed on January 31, 2017. This matter is fully briefed and for the reasons that follow, the Court will deny SCI's Motion for Summary Judgment.

### II. FACTUAL BACKGROUND

SCI is a provider of pre-need cremation services, doing business as Neptune Society. Dkt. No. 36, Pg ID 486. SCI gathers potential customers' contact information through the Neptune Society website or mailer cards sent by potential

customers. *Id.* To sell pre-need cremation services, SCI contacts potential customers via telephone to set up follow-up appointments and briefly explain its services. *Id.* SCI prohibits its sales staff from finalizing sales over the phone and requires customers physically sign the cremation services contracts. *Id.* at Pg ID 487.

In February 2013, Allard sent SCI a mailer card requesting further information about SCI's services with her contact information, including her phone number, email address, and residence address. *Id.* SCI's Sales Manager Jon Halprin assigned the lead to Janette Atkins, an independent sales representative at SCI. Dkt. No. 36-4, Pg ID 505. On February 11, Atkins called Allard, but the call was not answered. *Id.* On February 12, Atkins called the number again, but Allard did not answer it. *Id.* On February 18, after receiving an email from SCI on that day, Allard called Atkins to inquire about SCI's services and asked whom she could contact when she wanted to purchase SCI's services. *Id.* On October 18, SCI called Allard to schedule a visit at her home. *Id.* However, Allard told SCI that she decided against using SCI's services, but she did not explicitly ask SCI not to call her again. Dkt. No.38-3, Pg ID 552–553. On March 6, 2014, Atkins called Allard, but she did not answer the phone. Dkt. No. 36-4, Pg ID 505.

On August 4, 2014, Allard received a prerecorded message. Dkt. No. 38, Pg ID 517. In the message, the caller claimed to be Kevin from the Neptune Society.

*Id.* The caller told Allard that she still has time to sign up before the price increases, and that choosing SCI's service is the most responsible arrangement she will make for her family. *Id.* The caller left a number to be called for further visit. *Id.* Allard called the number provided and left a voicemail asking not to be contacted again. Dkt. No. 21, Pg ID 90. Allard also called SCI's corporate office and left a voicemail asking that SCI refrain from contacting her. *Id.* On August 5, SCI changed Allard's contact information in its lead system to "DO NOT CONTACT." Dkt. No. 36-4, Pg ID 505. On August 6, Mr. Halprin sent Allard an email thanking her for her interest in SCI's services. Dkt. No. 38-5, Pg ID 564. Allard replied that she did not want SCI to contact her again. *Id.* at Pg ID 566. On August 6, Allard filed a complaint with the Better Business Bureau ("BBB"), asking for its help in stopping the calls. Dkt. No. 38-4, Pg ID 562. On August 11, SCI through the BBB apologized to Allard and promised that they would remove Allard's address and telephone number from the database promptly. *Id.*

On September 17, however, Allard received another prerecorded message speaking on behalf of SCI. Dkt. No. 38, Pg ID 518. The phone message offered a special deal and encouraged Allard to sign up before the price increases. *Id.* The message left a phone number, 615-373-6946, which is Mr. Halprin's business number. Dkt. No. 38-5, Pg ID 565. Allard subsequently updated her BBB

complaint and filed a complaint with the Federal Trade Commission. Dkt. No. 38-4, Pg ID 562; Dkt. No. 38-6, Pg ID 568–673.

SCI later learned that Mr. Halprin created an account with CallFire and purchased its services to make prerecorded calls. Dkt. No. 36, Pg ID 489, para. 24. CallFire is a registered common carrier that provides web-based services allowing its customers to create custom-made voice or text messages and transmitting those messages to recipients provided by the user at a time selected by the user. Dkt. No. 38-10, Pg ID 586; Dkt. No. 38-19, Pg ID 664, para. 46. Defendant alleges that it does not allow its independent sales representatives or sales managers to utilize third-party websites like CallFire to assist in their sales. Dkt. No. 36, Pg ID 489, para. 28. However, Mr. Halprin claims that there was never a policy forbidding the use of third-party websites during his employment with SCI. Dkt. No. 38-19, Pg ID 665, para. 57. Rather, SCI introduced CallFire to its branches and encouraged sales teams to use it. *Id.* para. 53. Conversely, SCI asserts that the calls on August 4, 2014 and September 17, 2014 were made without SCI's knowledge or consent. Dkt. No. 38-1, Pg ID 537.

According to the declaration of Dolores Ramos, the Senior Vice President of SCI, SCI trains its independent sales representatives and sales managers on how to disposition a sales lead in its lead management program, and on options to disposition a call including "DO NOT CONTACT" and "DO NOT CALL – DO

NOT MAIL." Dkt. No. 36, Pg ID 488–489. Yet, in its Answer to the First Amended Complaint, SCI admits that it did not have a written policy for maintaining a do-not-call list. Dkt. No. 22, Pg ID 104, para. 42. Moreover, Mr. Halprin asserts that SCI did not provide its sales teams with any formal training on any general do-not-call list or policy. Dkt. No. 38-19, Pg ID 663, para. 35. In addition, Mr. Halprin claims that he occasionally received leads to call on a "Spice List," which did not contain previous call dispositions. *Id.* at Pg ID 663–64, para. 37–41. Often, persons on the Spice List claimed to have previously asked Defendant not to call. *Id.* at Pg ID 664, para. 44.

### III. LAW & ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) "directs that summary judgment shall be granted if 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998). The Court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, the Court

evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

This action involves two claims: whether SCI violated § 227(b) by initiating two prerecorded telemarketing calls after Allard requested she not be contacted by SCI, and whether SCI violated § 227(c) by failing to enact a written policy for a do-not-call list and by its failure to train its employees in the use of the do-not-call list.

### B. § 227(b) Violation

Title 47 U.S.C. § 227(b) prohibits making prerecorded telephone calls without prior consent. Specifically, the pertinent TCPA section states:

> It shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service.

47 U.S.C. § 227(b)(1)(A)(iii). For calls that include an advertisement, or constitute telemarketing, the Federal Communications Commission's ("FCC") regulations further provides that:

> No person or entity may . . . [i]nitiate or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers [assigned to cellular telephone service], other than . . . a call

> made with the prior express written consent of the called party or the called party must give prior express written consent.

47 C.F.R. § 64.1200(a)(2). In support of its Motion for Summary Judgment, SCI alleges that (1) it did not initiate the prerecorded telemarketing calls to Allard, (2) that the calls are informational rather than telemarketing, and, in the alternative (3) Allard gave prior written consent to receive those calls. None of SCI's arguments can sustain a challenge without genuine disputes over the material facts, thus it is not entitled to summary judgment on Plaintiff's § 227(b) claim.

**1. Maker of the Prerecorded Calls**

"[A] person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call." *DISH Network, LLC*, 28 FCC Rcd. 6574, 6583 (2013). A person or entity is directly liable for initiating a specific telephone call when it is so involved in the placing of the call. *Id.* The degree of involvement could be demonstrated by its control over the content, timing, and recipients of the call. *See Kauffman v. CallFire*, Inc., 141 F. Supp. 3d 1044, 1047 (S.D. Cal. 2015) (finding that based on CallFire's lack of involvement in selecting the content, timing, and recipients of messages, it did not initiate text messages). Common carriers are not liable under the TCPA absent a "high degree of involvement or actual notice of an illegal use and failure to take steps to prevent such transmissions." *In the Matter of Rules and Regulations Implementing the TCPA of 1991*, 7 FCC Rcd. 8752, 8779–80 (1992); *see also Rinky Dink Inc. v.*

*Elec. Merch. Sys.*, No. C13–1347–JCC, 2015 WL 778065 (W.D. Wash. Feb. 24, 2015) (finding CallFire to be a common carrier because it offered indiscriminate service to the public, did not control the content or timing of the messages, did not control the recipient list, and was not highly involved with the TCPA violations at issue).

SCI argues that it was CallFire, not SCI nor Mr. Halprin that initiated the prerecorded calls because SCI only paid the credits and submitted the number to CallFire, and CallFire determined the content, timing, and manner of the calls. Dkt. No. 34, Pg ID 397–98. However, SCI bases its entire argument on Ramos's declaration, yet Ramos fails to indicate how she has personal knowledge of the mechanics of CallFire.

Therefore, summary judgment is inappropriate because the Court cannot conclude that SCI did not initiate the prerecorded calls. In *Kauffman*, the court held that CallFire did not initiate the text messages due to its lack of involvement in selecting the content, timing, and recipients of messages. 141 F. Supp. 3d at 1047. Similarly in *Rinky Dink Inc*, the court concluded CallFire did not fall within the scope of TCPA because it offered indiscriminate service to the public, did not control the content or timing of the messages, did not control the recipient list, and was not highly involved with the TCPA violations at issue. 2015 WL 778065, at *7. Here, the evidence of record shows that CallFire allows its customers to create

the content of the messages, decide the telephone numbers to contact, and select when to send the messages. *See* Dkt. No. 38, Pg ID 521–22; Dkt. No. 38-10; Dkt. No. 38-11. Additionally, the specificity of the prerecorded calls' content suggests that SCI created the messages made to Allard. The August 4, 2014 call and the September 17, 2014 call both mentioned SCI's internal business information concerning upcoming price increases, which is unlikely to be within CallFire's knowledge. Dkt. No. 38, Pg ID 517–18. Therefore, it is plausible that a reasonable jury would find it is SCI, rather than CallFire, that initiated the prerecorded telephone calls.

**2. The Telemarketing Nature of the Prerecorded Calls**

No person or entity may initiate, or cause to be initiated, any telemarketing telephone call using an artificial or prerecorded voice to any telephone numbers assigned to cellular telephone service, other than a call made with prior written consent. 47 C.F.R. § 64.1200(a)(2). Telemarketing is "the initiation of a telephone call or message *for the purpose* of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12) (emphasis added). In 2003, the FCC articulated a purpose-based standard in evaluating the prerecorded calls that contain both telemarketing information and non-telemarketing information. *2003 TCPA Order*, 18 FCC Rcd. 14014, 14098, para. 142 (F.C.C. 2003). The FCC provided that notwithstanding its

free offer or other information, a call is an advertisement if it is intended to offer property, goods, or services for sale either during the call, or in the future. *Id.*

SCI argues that the calls made by its sales representatives were intended to provide information about SCI's services and thus, they were not telemarketing calls. Dkt. No. 34, Pg ID 390. However, the telephone calls in dispute here are not the non-prerecorded calls, but the August 4, 2014 call and the September 17, 2014 call. The content of the prerecorded calls reveal their telemarketing nature because they explicitly encouraged Allard to sign up for SCI's services. *See* Dkt. No. 38, Pg ID 518. Moreover, SCI does not contend that the prerecorded calls are not telemarketing. *See* Dkt. No. 41, Pg ID 678. Lastly, Mr. Halprin confirmed that "[a]ll calls made by the sales team to leads had the ultimate goal of making a sale of Neptune Society's services." Dkt. No. 38-19, Pg ID 663, para. 30.

### 3. Prior Express Written Consent

The FCC's rules distinguish telemarketing calls from non-telemarketing calls because consent exemption requirements are different. *Compare* 47 C.F.R. § 64.1200(a)(1) (requiring prior express consent to exempt non-telemarketing prerecorded calls) *with* 47 C.F.R. § 64.1200(a)(2) (requiring prior express *written* consent to exempt telemarketing prerecorded calls) (emphasis added). Prior express written consent must clearly authorize the seller to deliver or cause to be delivered to the person telemarketing messages using an artificial or prerecorded

voice. 47 C.F.R. § 64.1200(f)(8). In 2015, the Sixth Circuit contrasted "prior express consent" with "prior express written consent," and noted that "[t]he FCC's regulations for telemarketers now require a more specific type of consent—namely, that the called party consents, in writing, to being called by an auto-dialer." *Hill v. Homeward Residential, Inc.*, 799 F.3d 544, 552 (6th Cir. 2015).

SCI relies on *Boyd v. General Revenue Corporation* to argue that a person may give consent by knowingly releasing her telephone number absent contrary instructions. *See* Dkt. No. 34, Pg ID 395; 5 F. Supp. 3d 940, 954 (M.D. Tenn. 2013). However, *Boyd* was decided on March 7, 2013, or before the prior express written consent requirement took effect on October 16, 2013. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 1830, 1857 (F.C.C. 2012). Thus, SCI's reliance on *Boyd* is misplaced.

Conversely, Allard relies on a number of cases holding that the consent agreement must disclose the possible use of prerecorded calls. *See e.g. Perri v. Rescue 1 Fin., LLC*, No. CV-15-00287, 2015 U.S. Dist. LEXIS 95717, at *1-2 (C.D. Cal. July 22, 2015); *Soular v. Northern Tier Energy LP*, No. 15-cv-556, 2015 U.S. Dist. LEXIS 112294, at *16-17 (D. Minn. Aug. 25, 2015); *Lennartson v. Papa Murphy's Holdings, Inc.*, No. C15-5307, 2016 U.S. Dist. LEXIS 725, at *7 (W.D. Wash. Jan. 5, 2016).

Here, SCI obtained Allard's information on a mailer card sent to SCI. Dkt. No. 38-1, Pg ID 539. There was no disclosure regarding the use of prerecorded calls on the mailer card. Dkt. No. 38-2, Pg ID 546. Moreover, SCI also admitted in discovery that none of its materials through which it solicited phone numbers contained any disclosure concerning the use of prerecorded calls. Dkt. No. 38-14, Pg ID 629, Response No. 3. Accordingly, summary judgment is inappropriate on the basis that SCI obtained prior express written consent from Allard to make prerecorded calls.

### C. § 227(c) Violation

In the Amended Complaint, Allard alleges that SCI violates 47 U.S.C. § 227(c) for failing to have a written policy for maintaining a do-not-call list and for its failure to train personnel on the use of the do-not-call list. Congress delegated to the FCC implantation of methods and procedures to protect residential telephone subscribers from receiving unwanted telephone solicitations. *See* 47 U.S.C. § 227(c). The FCC requires persons and entities initiating telemarketing calls to keep a written policy for maintaining a do-not-call list, and to train relevant personnel on the existence and use of the do-not-call list. 47 C.F.R. § 64.1200(d). Such rules are also applicable to telemarketing calls made to cellular phones. 47 C.F.R. § 64.1200(e).

SCI argues that (1) it does not initiate telemarketing calls, and § 64.1200(d) is inapplicable to SCI, (2) it trains its sales team on the use of its do-not-call list, and (3) it does not need to follow § 64.1200(d) rules if the person being called gave prior express consent. Dkt. No. 34, Pg ID 392. As explained above, a question of fact exists as to whether SCI is liable as the initiator of the prerecorded telemarketing calls made on August 4, 2014 and September 17, 2014. *See supra* Part. III.B.1. Therefore, the Court cannot conclude that § 64.1200(d) is inapplicable to SCI. For the reasons discussed below, there are genuine issues of material fact concerning Allard's § 227(c) claim, thus SCI is not entitled to summary judgment on this claim.

**1. Having a Written Policy for Maintaining a Company-Specific Do-Not-Call List**

Any entity making telemarketing calls must have a "written policy, available upon demand, for maintaining a do-not-call list." 47 C.F.R. § 64.1200(d)(1). SCI has admitted that at the time the lawsuit was filed, it did not maintain a written "do not call" policy. Def.'s Answer, Dkt. No. 22, para. 42; Def.'s Mem. in Supp., Dkt. No. 34, Pg ID 392. Thus, questions of fact remain as to whether SCI violated 47 C.F.R. § 64.1200(d)(1) by not having a written policy for maintaining a do-not-call list.

## 2. Training of Personnel Engaged in Telemarketing

Personnel engaged in telemarketing must be informed and trained in the existence and use of the do-not-call list. 47 C.F.R. § 64.1200(d)(2). Relying on Ramos's declaration, SCI argues that it provides adequate training for its employees because it teaches its sales personnel on how to disposition a customer lead as "do-not-call" status. Def.'s Mem. in Supp. of Its Mot. for Summ. J., Dkt. No. 34, Pg ID 391. However, Mr. Halprin stated that "SCI/Neptune Society corporate provided neither myself nor the sales team with any formal training on dispositioning calls in such a way, nor did it provide training on any general do-not-call list or policy." Halprin Aff., Dkt. No. 38-19, Pg ID 663, para. 35. Here, there is a genuine dispute of fact concerning whether SCI provided any training in the existence and use of the do-not-call list.

## 3. The Scope of Application of the 47 C.F.R. § 64.1200(d) Rules

Federal regulations state that "[n]o person or entity shall initiate any call for telemarketing purposes . . . unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." 47 C.F.R. § 64.1200(d). Nowhere in this section does it mention that a person or entity may make telemarketing calls without instituting procedures for a do-not-call list if the persons being called do not object to the telephone solicitations.

The Court cannot disregard the plain language of 47 C.F.R. § 64.1200(d) as requested by SCI, because the text of 47 C.F.R. § 64.1200(d) is not contrary to Congress's legislative intent. Indeed, 47 U.S.C. § 227(c) instructs the FCC to regulate unwanted telemarketing calls. 47 C.F.R. § 64.1200(d) fulfilled Congress's legislative purpose by providing rules regarding the company-specific do-not-call list. The do-not-call procedures make sure that the telephone users who have given consent to telemarketing calls have an option to revoke their prior consent and that their decisions are honored by telemarketers. Thus, even if SCI only initiates telemarketing calls to customers who have given permission to receive such calls, it would still be required to maintain a do-not-call list to permit those customers to opt-out of getting telemarketing calls if they so desire. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8765, para. 24 (1992) ("we must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy.").

Notably, Allard never gave prior express written consent to receive prerecorded telemarketing calls from SCI. Moreover, the telemarketing robocalls happened after Allard had repeatedly requested she not be contacted by SCI. Accordingly, SCI's argument that it does not need to follow 47 C.F.R. §

64.1200(d) rules if the person being called gave prior express consent is without merit.

## V. Conclusion

For the foregoing reasons, SCI's Motion for Summary Judgment [#33] is **DENIED**.

SO ORDERED.

Dated: July 10, 2017

/s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge
Sitting By Special Designation